UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SUNANDA "SUE" TRIPATHI-MANTERIS, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> ROBERT "BOB" STOLDAL, et al., ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:11-cv-00794-GMN-CWH <br><br> **ORDER** |

Pending before the Court is Defendants' Motion to Compel Arbitration and to Stay Proceedings (ECF No. 22) pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, Nevada's Uniform Arbitration Act of 2000, codified in Chapter 38 of Nevada Revised Statutes, and the arbitration provisions of the employment agreements signed by Plaintiff Sunanda Tripathi-Manteris.  For the purposes of this action, the parties refer to the four entities Defendants Valley Broadcasting, Southern Nevada Communications, Intermountain West, and Sunbelt collectively as "the Station," and the Court will do so as well.

I.      **BACKGROUND**

Plaintiff was employed as a Broadcast Journalist/News Anchor with the Station d/b/a KSNV-DTV, Channel 3, Las Vegas, Nevada, for over two decades before filing the instant lawsuit alleging violations of Title VII of the Federal Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.), the Civil Rights Act of 1866 (42 U.S.C. § 1981), and the Age Discrimination in Employment Act ("ADEA") of 1967 (29 U.S.C. § 621-634). (Complaint, ECF No. 1.)  Defendant Howfield was a supervisor of Plaintiff and the Vice President/General Manager for KSNV-DTV, Channel 3.  Defendant Stoldal was also a supervisor of Plaintiff and became the News Director/Vice President of News for KSNV-DTV, Channel 3 in August 2009. Defendant Hill

was the General Counsel for the Station.

In her Complaint, filed in May 2011, Plaintiff alleges ten causes of action stemming from actions taken by Defendant Stoldal during his tenure as News Director/Vice President of News and Plaintiff's supervisor:

1. Title VII Claim for Race Discrimination (Stoldal, Howfield, the Station);
2. 42 U.S.C. § 1981 Claim for Race Discrimination (Stoldal, Howfield, the Station);
3. Title VII Claim for Hostile Work Environment (Stoldal, Howfield, the Station);
4. Harassment based on Race (Stoldal, Howfield, the Station);
5. Title VII Claim for Age Discrimination (Stoldal, Howfield, the Station);
6. ADEA Claim for Age Discrimination (Stoldal, Howfield, the Station);
7. Title VII Claim for Gender Discrimination (Stoldal, Howfield, the Station);
8. Title VII Claim for Retaliation (Hill, Stoldal, Howfield, the Station);
9. Breach of the Implied Covenant of Good Faith and Fair Dealing (the Station);
10. Negligent Supervision and Training (the Station).

(*Id.*)

During the course of her employment, Plaintiff appears to have signed eight employment agreements, the last five of which contained arbitration provisions. The most recent employment agreement (the "Agreement") was signed in June 2007 and was for a term ending on June 10, 2011. The relevant arbitration provision refers to Plaintiff as "Artist" and states:

> Any dispute, controversy or claim between the parties under state tort or contract law whether it arises out of or relates to this Agreement or breach thereof, or which arises out of or relates in any manner to the employment of Artist or his/her termination, shall be submitted to arbitration in accordance with the then existing Uniform Arbitration Act as adopted by the State of Nevada in NRS 38.206 to NRS 38.428.

("Agreement," 7:¶12, Ex. 1 to Howfield Decl., Ex. A to Motion to Compel Arbitration, ECF No. 22-1.) This provision also requires that "[a]ny request to arbitrate shall be made in writing and

promptly delivered to the other party and shall be in accordance with applicable Nevada Revised Statute." (*Id.*)  The parties do not dispute that before the filing of this motion, Defendants first made a request in writing pursuant to this provision. (*See* "Letter," Ex. 1 and "Letter," Ex. 2 to Martin Decl., Ex. B to Motion to Compel Arbitration, ECF No. 22-2.)

## II.     LEGAL STANDARD

As recently reiterated by the United States Supreme Court, Section 2 of the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  This provision requires courts to place arbitration agreements "on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010) (internal citation omitted); *accord CompuCredit Corp. v. Greenwood*, 132 S.Ct. at 669; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  "That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, 132 S.Ct. at 669 (quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

The Supreme Court has emphasized that it "has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law" adding that "as we noted in *Gilmer*, '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) (alteration in original) (quoting *Gilmer*, 500 U.S. at 26) (reversing a judgment of the Ninth Circuit Court of Appeals that concluded that all employment contracts are excluded from the FAA).  Moreover, "[the Supreme Court] has squarely held that the ADEA

does not preclude arbitration of claims brought under the statute." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) (citing *Gilmer*, 500 U.S. at 26-33).

The Ninth Circuit Court of Appeals, construing Supreme Court precedent and overruling its own precedent, stated that "the right to jury trial presents no bar to compulsory arbitration" of Title VII claims. *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 750 (9th Cir. 2003) (en banc). The Nevada Supreme Court has also concluded that "the language of Title VII does not expressly preclude arbitration." *Kindred v. Second Judicial Dist. Court*, 996 P.2d 903, 907 (Nev. 2000) (reviewing precedent of the United States Supreme Court).

"Because the FAA mandates that 'district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (alteration in original) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000).

In Nevada, "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." NRS 38.219. "[I]n reviewing arbitration agreements, the issue of '[w]hether a dispute is arbitrable is essentially a question of construction of a contract.'" *Kindred v. Second Judicial Dist. Court*, 996 P.2d at 907 (quoting *Clark Co. Public Employees v. Pearson*, 798 P.2d 136, 137 (Nev. 1990)). "'[A]rbitration clauses are to be construed liberally in favor of arbitration.'" *Id*. (quoting *Phillips v. Parker*, 794 P.2d 716, 718 (Nev. 1990)).

In judging the scope of an arbitration agreement, Nevada courts "'resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration.'" *Id.* (quoting *Int'l Assoc. Firefighters v. City of Las Vegas*, 764 P.2d 478, 480 (Nev. 1988)).

"Disputes are presumptively arbitrable, and courts should order arbitration of particular grievances 'unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *Int'l Assoc. Firefighters*, 764 P.2d at 481). Invoking precedent of the United States Supreme Court, the Nevada Supreme Court has stated that "in cases involving broadly worded arbitration clauses, 'in the absence of any express provision excluding a *particular* grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id.* (quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986)).

### III.  DISCUSSION

Here, the parties disagree as to whether the agreement's scope encompasses the dispute at issue. Accordingly, the Court will resolve all doubts concerning the arbitrability of the subject matter of this dispute in favor of arbitration, and will order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. The issue is "whether the arbitration clause is susceptible of an interpretation that covers this dispute". The Court cannot say with *positive assurance* that it is not. In fact, as discussed below, the Court finds that the arbitration clause can clearly be interpreted to cover all of Plaintiff's claims. Pursuant to the court's decision in *Firefighters*, supra, any doubts are resolved in favor of arbitration. Therefore, arbitration will be compelled.

Defendants argue that all of Plaintiff's claims are subject to the arbitration provision. Plaintiff concedes that her last two claims are subject to the arbitration provision, but argues that "her Employment Agreement does not require her to participate in arbitration for the [eight] Federal Title VII causes of action she alleges in her Complaint." (Pl.'s Resp. to Motion to Compel Arbitration, 3:5-6, 7:22-24, ECF No. 23.) Plaintiff argues that these claims "are grounded in Federal law and of a nature specifically excluded from the agreement to arbitrate." (*Id.* at 3:26.)

Plaintiff's disagreement with Defendants relies upon her construction of the text of the arbitration provision, and specifically the description of the types of claims that must be submitted to arbitration which reads as follows:

> Any dispute, controversy or claim between the parties under state tort or contract law whether it arises out of or relates to this Agreement or breach thereof, or which arises out of or relates in any manner to the employment of Artist or his/her termination . . .

A comparison of the two competing constructions of the provision can be illustrated as follows, with the Court's grammatical additions included in brackets:

> (1) Any dispute, controversy or claim between the parties[:]
>     [a.] under state tort or contract law
>         [i.] whether it arises out of or relates to this Agreement or breach thereof, or
>         [ii.] which arises out of or relates in any manner to the employment of Artist or his/her termination . . .
> (2) Any dispute, controversy or claim between the parties[:]
>     [a.] under state tort or contract law whether it arises out of or relates to this Agreement or breach thereof, or
>     [b.] which arises out of or relates in any manner to the employment of Artist or his/her termination . . .

Plaintiff argues that "the express mention of 'state tort' and 'contract law' claims within the arbitration provision confirms that Federal employment anti-discrimination statutes were specifically excepted from the claims that [she] agreed to arbitrate." (*Id*. at 6:1-3.) Plaintiff's construction of this provision would have the Court find that there is only one category into which a "dispute, controversy or claim between the parties" subject to arbitration could fall, i.e., those falling "under state tort or contract law." However, the Court does not agree with this construction of the arbitration provision.

Although the text of this provision could certainly be drafted *more* clearly, the comma preceding the clause "or which arises out of or relates in any manner to the employment of Artist or his/her termination" indicates that there are two categories into which a "dispute, controversy

or claim between the parties" could fall: (1) one which falls "under state tort or contract law. . ."; and (2) one which "arises out of or relates to this Agreement or breach thereof." The Court finds that the text of the arbitration provision is clear and that Plaintiff's causes of action fall under the second category of claims that arise out of or relate to the Agreement or breach thereof.

Plaintiff argues that because the arbitration provision does not specifically "mention . . . claims arising under Federal employment anti-discrimination statutes," her agreement to arbitrate was not knowing and intentional. Although Plaintiff is correct that such a waiver must be knowing and intentional, she cites no case law that supports her proposition that such federal claims must actually be specifically identified in an arbitration provision in order to be knowingly and intentionally waived. In contrast, Defendants cite to multiple federal and state court decisions that uphold broadly worded arbitration provisions such as the one here. (*See* Defs.' Reply to Motion to Compel Arbitration, ECF No. 24.) Therefore, the Court is not persuaded by Plaintiff's argument and finds that her agreement to arbitrate disputes, controversies or claims arising out of or relating in any manner to her employment or her termination was knowing and intentional, and that therefore her claims are subject to arbitration.

The Court recognizes the policy debates surrounding arbitration, particularly in the context of employment discrimination claims. *See*, *e.g.*, EEOC Policy Statement on Mandatory Binding Arbitration of Employment Discrimination Disputes as a Condition of Employment, No. 915.002 (July 10, 1997), *available at http://www.eeoc.gov/policy/docs/mandarb.html* (taking the position that mandatory arbitration agreements will adversely affect the EEOC's ability to enforce the civil rights laws); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274-77 (Stevens, J., dissenting) (expressing concern at the Supreme Court's "subversion of precedent to the policy favoring precedent"); *id.* at 277-86 (Souter, J., dissenting) (disagreeing with the majority's "treatment of precedent in statutory interpretation"). However, these policy arguments are not relevant to the Court's determination of the issues at hand. Instead, the Court's determination is

based upon the law as set forth in statutes and controlling precedent.

To the extent that commentary on the enforcement of arbitration provisions in the employment context may be illuminating, the Court refers to the Supreme Court's discussion of the "real benefits to the enforcement of arbitration provisions" in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122, 123-24 (2001) and to its discussion of the EEOC's related roles and remedies in *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-94 (2002).  In *Waffle House*, the Supreme Court recognized that individuals who agreed to submit their claims to arbitration may nevertheless also file a complaint with the EEOC, and held "that an arbitration agreement signed by an employee who becomes a discrimination complainant does not bar the EEOC from filing an enforcement suit in its own name." *Preston v. Ferrer*, 552 U.S. 346, 358 (2008) (discussing *Waffle House*, 534 U.S. at 293-94).  And in *Circuit City*, the Supreme Court explained its general approach to the enforcement of arbitration provisions under the FAA:

> We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. See *Gilmer*, 500 U.S., at 30-32, 111 S.Ct. 1647.  Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts.  These litigation costs to parties (and the accompanying burden to the courts) would be compounded by the difficult choice-of-law questions that are often presented in disputes arising from the employment relationship . . . . The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law; as we noted in *Gilmer*, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."

*Circuit City*, 532 U.S. at 124.

The Supreme Court's favorable approach to arbitration was recently reinforced by its expression of "disavow[al of] the anti-arbitration dicta of *Gardner-Denver* and its progeny " and

its comment that "in light of the 'radical change, over two decades, in the Court's receptivity to arbitration,' reliance on any judicial decision similarly littered with *Wilko*'s overt hostility to the enforcement of arbitration agreements would be ill advised." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 267 & n.9 (2009) (citation omitted) (quoting *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 77 (1998)) (discussing its reliance on the decision in *Wilko v. Swan*, 346 U.S. 427 (1953) in the reasoning in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)).

## IV.  CONCLUSION

For the reasons discussed above,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration and to Stay Proceedings (ECF No. 22) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims are hereby compelled to arbitration and this case shall be **STAYED** pending the completion of arbitration.

**DATED** this 29th day of March, 2012.

_____
Gloria M. Navarro
United States District Judge